**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

NOV 12 2019

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| LYNNE M. FLETCHER-SILVAS, | No. 18-35949 |
| Plaintiff-Appellant, | D.C. No. 3:17-cv-05707-RSL |
| v. | |
| ANDREW M. SAUL, Commissioner of Social Security, | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Submitted November 6, 2019**
Seattle, Washington

Before: GOULD and NGUYEN, Circuit Judges, and PRESNELL,*** District
Judge.

Lynne Fletcher-Silvas appeals the judgment of the district court affirming

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\* The Honorable Gregory A. Presnell, United States District Judge for
the Middle District of Florida, sitting by designation.

the Commissioner of Social Security's denial of her claim for disability benefits under Title II of the Social Security Act for the period starting November 1, 2015. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

1.   The Administrative Law Judge ("ALJ") did not err in evaluating the medical evidence.  The ALJ assessed the totality of the medical evidence before her and drew reasonable inferences from the record about what Fletcher-Silvas could and could not do given her condition.  While there was some competing evidence from which a contrary inference might have been drawn, the ALJ's conclusions were supported by substantial evidence.  *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *see also Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (explaining that "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence").

Fletcher-Silvas's medical records reveal a strong trajectory of improvement. Although she had not recovered fully by November 2015, she had regained sufficient functionality to support the ALJ's determination that, as of November 1, 2015, she was no longer disabled for purposes of Social Security Disability.  By that time, her resting pain level hovered around three or four out of ten during the daytime, and her range of motion had improved dramatically.  She also reported

2

engaging in regular physical activity, although she continued to experience some accompanying pain. Through physical therapy, Fletcher-Silvas gained strength in her legs and improved her gait mechanics, and she had achieved sufficient progress that she was discharged from physical therapy by the end of October. Her physical therapist noted that she "achieved all therapeutic goals" of her physical therapy regimen and cleared her to return to her regular activities. Her treating physician reported similar findings as of October 2015. He noted that her knees "fe[lt] stable and balanced," her range of motion had increased significantly, and there were no signs of complications with her knee replacements. Although Fletcher-Silvas continued to report some pain, the record did not mandate the conclusion that she continued to experience a *disabling* level of pain. Based on the medical evidence, and despite Fletcher-Silvas's arguments to the contrary, the ALJ reasonably found that Fletcher-Silvas experienced medical improvement by November 2015.

2. The ALJ did not err in discrediting Fletcher-Silvas's testimony regarding her limitations since November 1, 2015. The ALJ provided several specific, clear, and convincing reasons—grounded firmly in the record—for discrediting Fletcher-Silvas's testimony. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015) (holding that "the ALJ may reject the claimant's testimony about the severity of those symptoms [of an underlying impairment] only by providing specific, clear, and convincing reasons for doing so"). For example, the ALJ noted

that Fletcher-Silvas testified that her left leg improved only slightly and her right leg did not really improve following her knee replacement surgeries; but that testimony conflicted with Fletcher-Silvas's self-reports to treatment providers and with the objective indicia of improvement in her medical records. The ALJ pointed to dramatic improvements in Fletcher-Silvas's range of motion, strength, general mobility, and gait mechanics over time, although the ALJ acknowledged that Fletcher-Silvas continued to have some mobility constraints. The ALJ added that medical imaging from October 2015 revealed that Fletcher-Silvas's knee replacements were in good condition, with no evidence of complications. The ALJ also emphasized that Fletcher-Silvas had reported improvement in her ability to perform activities of daily living, and that she had reported adhering to a fitness regimen that included regular visits to the gym and to a water aerobics class— which the ALJ found conflicted with her later testimony about her mobility limitations and overall state of recovery as of November 2015.

The ALJ listed one additional reason for discrediting Fletcher-Silvas's testimony: a failure to follow through with a prescribed diet and recommended specialist visits with an allergist and/or nutritionist. Unlike the ALJ's other stated rationales, this assertion lacked adequate support in the record. However, the error was harmless in light of the other valid bases the ALJ relied on to discredit Fletcher-Silvas's testimony as to her limitations. *See Molina v. Astrue*, 674 F.3d

4

1104, 1115 (9th Cir. 2012) (explaining that "an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination'") (citations omitted).

3.   Because the ALJ did not err in discrediting Fletcher-Silvas's testimony about her limitations, the ALJ also did not err in declining to include some of Fletcher-Silvas's asserted limitations in the residual functional capacity assessment.  And because the residual functional capacity assessment was appropriate, the ALJ did not err in using it as the foundation for steps four and five of the sequential evaluation process.

**AFFIRMED.**